# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ABDIRIZAK MURSAL ARAB,<br><br>    Petitioner,<br><br>vs.<br><br>STATE OF IOWA,<br><br>    Respondent. | No. C24-4037-LTS-KEM<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

## I.    INTRODUCTION

Before me is Abdirizak Mursal Arab's amended petition (Doc. 4) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Arab is incarcerated at the Fort Dodge Correctional Facility in Fort Dodge, Iowa, and the State of Iowa is the respondent. This case is fully submitted and I find that oral argument is not necessary. *See* Rules Governing § 2254 Cases, Rule 8(a).

On May 12, 2021, a jury found Arab guilty of second-degree theft as a habitual offender. *State v. Arab*, No. 21-0944, 2022 WL 5073852, at *1 (Iowa Ct. App. Oct. 5, 2022). Arab filed a motion in arrest of judgment, renewing a challenge to the sufficiency of the evidence that he made during trial. *Id*. The Iowa District Court denied the motion and proceeded to sentence Arab. The Iowa Court of Appeals affirmed, and the Iowa Supreme Court denied further review. Arab pursued a postconviction relief (PCR) action, arguing that there was insufficient evidence supporting the guilty verdict. The Iowa courts denied that claim.

Arab's § 2254 amended petition is before me on the issue of sufficiency of the evidence. *See* Doc. 4. For the reasons that follow, Arab cannot succeed on the merits of his claim.

## II. STATE COURT PROCEEDINGS

On January 20, 2021, the State of Iowa charged Arab by trial information with theft in the second degree by exercising control of a stolen vehicle as a habitual felon in violation of Iowa Code §§ 714.1(4), 714.2(2) and 902.8. Doc. 7-4 at 4-5. The charges stemmed from Arab entering an unlocked vehicle idling outside of a convenience store and then speeding away in the vehicle. The Iowa Court of Appeals summarized the facts as follows:

> Arab entered a convenience store looking for some chicken, but he left when told the store was out of chicken. Arab lingered outside. A store clerk told him he could not loiter. Arab responded that he was waiting for a ride.
>
> A short time later, an SUV pulled up in front of the store. Both the driver and the passenger exited the SUV and went inside. They left the SUV's engine running. Arab seized the opportunity and got into the SUV and sped away, nearly colliding with another vehicle. The driver gave chase on foot but was unable to catch the fleeing SUV.
>
> The driver called law enforcement and walked home. The driver and his passenger then set out to look for the SUV. They found it parked on a residential street. When they approached the SUV, Arab came walking out of a nearby alley. Arab asked if they were looking for the SUV. When told that they were, Arab presented the keys and stated his friend told him to give the keys back to the driver. Arab also produced the driver's cell phone, cigarettes, lighter, and the front plate of the SUV's radio on the driver's demand. Arab tried to leave when the driver recognized him as the person who drove off in the SUV, but the driver held Arab down until police arrived.

*Arab*, 2022 WL 5073852, at *1.

At trial, the convenience store clerk and vehicle driver identified Arab as the person who took the vehicle, as confirmed by surveillance camera video. *Id.* On May 12, 2021, a jury found Arab guilty of second-degree theft for possessing stolen property. Doc. 7-4 at 11. The jury found that he had two prior burglary convictions and one prior

2

Case 5:24-cv-04037-LTS-KEM    Document 25    Filed 06/23/25    Page 2 of 19

carjacking conviction, rendering him guilty of a habitual offender enhancement in violation of Iowa Code § 902.8. *Id*. at 12.

Arab filed a motion to arrest judgment and a motion for a new trial on June 18, 2021, arguing that the evidence at trial established a reasonable doubt of his guilt. *Id*. at 13. Arab stated that he "renews the arguments of counsel during closing statements and those made during the motions for a directed verdict" and asserts that "the weight of the evidence is insufficient to sustain the verdicts of guilty." *Id*. The State's resistance argued that a new trial was not warranted because the verdicts were not contrary to the weight of the evidence:

> Numerous witnesses, both civilian and law enforcement, testified that the 2002 Chevrolet Tahoe in this case was stolen and that on or about January 13, 2021, Arab exercised control of the automobile knowing that the vehicle had been stolen and that Arab did not inten[d] to promptly return the automobile or deliver it to a police officer. The witnesses' testimony was consistent with each other and was further corroborated by the physical evidence produced during the trial.

*Id*. at 15-16. In addition, the State argued that a motion in arrest of judgment cannot be used after trial to challenge the sufficiency of the evidence. *Id*. at 16. The Iowa District Court denied Arab's motions, reasoning that "the greater amount of credible evidence supports the verdict," incorporating the resistance and its factual summary, and agreeing that a motion in arrest of judgment may not be used to challenge the sufficiency of evidence. *Id*. at 19-20. On June 24, 2021, the court sentenced Arab to an indeterminate term not to exceed 15 years for theft in the second degree (exercising control of a stolen vehicle) as a habitual felon, imposing a mandatory minimum sentence of three years. *Id*. at 22-36.

On appeal, Arab asserted that the record did not establish that the vehicle was "stolen." *See* Doc. 7-5. Arab argued that Iowa Code § 714.1(4) inherently requires that, for an object to be "stolen," *someone* must have taken the property with intent to permanently deprive the owner of the property and there was insufficient evidence of that

3

intent. *Id.* at 15 ("While Arab's intent to permanently deprive is not a strict element of exercising control over stolen property, there cannot be proof the property was stolen without some showing someone intended to permanently deprive the owner of the property."). Arab argued that the vehicle was missing only for approximately an hour and a half, Arab did not try to conceal the vehicle but rather parked it on a public street, and Arab did not flee or "exhibit evasive conduct when the vehicle was located." *Id.* at 16-17. The State replied that an intent to permanently deprive is not an element of theft by exercising control over stolen property under § 714.1(4). *See* Doc. 7-6. Rather, that element is required only for a violation of theft by taking under § 714.1(1). *Id.* at 15.

The Iowa Court of Appeals affirmed. Doc. 7-7; *Arab*, 2022 WL 5073852, at *1. The court analyzed §§ 714.1(1) and 714.1(4) and stated that, "[c]omparing these two subsections, we see that section 714.1(1) requires proof of 'intent to [permanently] deprive,' while section 714.1(4) does not." *Arab*, 2022 WL 5073852, at *2. The court noted that previous caselaw rejected Arab's argument that, even though the State was not required to prove *he* had an intent to permanently deprive the owner under § 714.1(4), the State was required to prove that *someone* had the intent to permanently deprive the owner of the vehicle. *Id.* (citing *State v. Brown*, No. 16-0359, 2017 WL 4049311, at *1-2 (Iowa Ct. App. Sep. 13, 2017)). The court thus continued to reject Arab's argument that the word "stolen" necessarily includes a requirement to prove an intent to permanently deprive. The court explained that § 714.1(4) "simply requires a showing that [the defendant] knew the property was stolen when he exercised control over it and he did not intend to promptly restore it." *Arab*, 2022 WL 5073852, at *2 (quoting *Brown*, 2017 WL 4049311, at *2). Concluding that substantial evidence supported the jury's verdict, the court stated that:

> The evidence established that Arab took possession of the SUV; sped away—almost striking another vehicle in the process; took items from the SUV, going so far as to remove the face plate of the SUV's radio and taking it out of the SUV; was found in the area where the SUV was discovered;

4

and then engaged in deception about who took the SUV when discovered. This evidence supports the finding that the vehicle was stolen, Arab knew it was stolen, and it was not his purpose to promptly return it to the owner or a public officer.

*Id.*[1] The Iowa Supreme Court denied Arab's request for further review. Docs. 7-8, 7-9.

Arab filed a PCR application challenging his conviction, asserting there was "no proof of intent not to return the vehicle," the vehicle was returned and this was at most joy riding. On November 16, 2023, the district court granted the State's motion for summary judgment. *See* Doc. 7-10. The court concluded that Arab's PCR claim, even if labeled an actual innocence claim, was the same sufficiency-of-the-evidence claim that he litigated and lost on direct appeal. *Id.* at 12. His PCR claim was therefore barred by Iowa Code § 822.8, which precludes relitigating issues decided adversely on direct appeal. *Id.* at 11-13. Arab did not appeal.

## III. FEDERAL HABEAS PROCEEDINGS

Arab filed his initial § 2254 petition in the Southern District of Iowa on March 28, 2024. Doc. 1. On April 15, 2024, the court granted Arab's motion to proceed in forma pauperis (Doc. 2) and directed Arab to file an amended petition clearly stating the basis for his request for relief. Doc. 3. On April 25, 2024, Arab filed an amended petition asserting four grounds: (1) the State failed to establish how much the stolen vehicle cost (Claim 1); (2) the stolen property was returned to the victim (Claim 2); (3) this was a

---

[1] The court addressed *Brown*'s special concurrence that opined that there must be proof that someone had the intent to permanently deprive the owner of the property. *Arab*, 2022 WL 5073852, at *2, n.1. The court concluded that, "[e]ven under the more exacting burden suggested by the concurring opinion in *Brown*, the evidence we have highlighted here constitutes substantial evidence that there was intent to permanently deprive the owner of the SUV, so it was stolen." *Id.*

5

joyriding case, citing *Brown* (Claim 3) and (4) there was no evidence of intent (Claim 4). Doc. 4 at 1-2.

On May 20, 2024, the court allowed his petition to proceed past initial review, stating that "[a]ll four claims in Arab's petition relate to the sufficiency of the evidence." Doc. 5. The court stated it considered his original petition and his supplement as one petition. *Id.* The State filed an answer to the § 2254 petition on June 6, 2024, arguing that Claim 1 was not properly exhausted in state court, Iowa courts properly rejected Claim 2's argument that the State failed to prove that Arab lacked a purpose to promptly return the property and Claims 3 and 4 were not subject to federal review. Doc. 8. On July 18, 2024, the Southern District transferred the case to this court because Arab was both convicted and incarcerated in the Northern District. Docs. 13, 14.

Arab filed his brief (Doc. 18) on August 5, 2024, along with four supplements (Docs. 19, 20, 22, 23). The State filed its responsive brief (Doc. 21) on September 6, 2024. Arab also filed a motion (Doc. 17) to appoint counsel, which I denied (Doc. 24).

### IV. APPLICABLE STANDARDS

Section 2254 states that, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) prescribes the standards for this court to review a state prisoner's petition for habeas corpus relief. A federal court will not grant a petition for writ of habeas corpus "unless it appears that (1) the applicant has exhausted the remedies available in the courts of the State [the exhaustion doctrine], (2) there is an absence of available State corrective process; or (3) circumstances exist that render such

6

process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B). *See also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that under the AEDPA, a petitioner must exhaust available state remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in the state court. In other words, a state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *Id.* at 845.

In Iowa, a prisoner must seek review through the "ordinary and established appellate review process" which includes an application for further review in the Iowa Supreme Court. *Welch v. Lund*, 616 F.3d 756, 758-59 (8th Cir. 2010) (internal citation omitted) (holding that an Iowa prisoner failed to exhaust his claims in the State court when prisoner's appeal of the state district court's decision to the Iowa Supreme Court was "deflected to the Iowa Court of Appeals" and the prisoner failed to file for further review in the Iowa Supreme Court).

Even when a prisoner's claim has been fully adjudicated in state court, a federal court still may not grant habeas relief unless the state court adjudication:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair minded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 578 U.S. 113, 116-17 (2016) (*per curiam*) (quotations and citations omitted). *See also Nash v. Russell*, 807 F.3d 892, 896 (8th Cir.

7

2015) (holding that under the AEDPA, a federal court can grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.") (quotation and citation omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* The presumption of correctness applies to all factual determinations made by state trial and appellate courts. *Pruett v. Norris*, 153 F.3d 579, 584 (8th Cir. 1998). Thus, for purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa,* 327 F.3d 748, 752 (8th Cir. 2003). *See also Jones v. Luebbers,* 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

If a petitioner has failed to exhaust an issue, the narrow exceptions require either that the petitioner demonstrate cause and prejudice, or that the petitioner shows that a fundamental miscarriage of justice will occur unless the federal court hears the claim. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To establish cause, a petitioner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *See Davila v. Davis,* 582 U.S. 521, 528 (2017); *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A showing that a legal or factual basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable would constitute cause. *Coleman,* 501 U.S. at 753

8

(citations omitted). Mere attorney error does not constitute cause, attorney conduct must constitute ineffectiveness, such that the conduct externalizes the problem to one of lack of counsel. *Id.* at 753-54. The Supreme Court has not defined "cause" with precise content, but it does exist where the basis of a claim was so novel it was not reasonably available at an earlier juncture. *See Reed v. Ross,* 468 U.S. 1, 13-16 (1984).

Alternatively, a petitioner may establish a right to relief by showing that a failure to consider his claims would constitute a miscarriage of justice. "To establish actual innocence, petitioner must demonstrate that, 'in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. U.S.,* 523 U.S. 614, 623 (1998) (*citing Schlup v. Delo,* 513 U.S. 298, 327-38 (1995)). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623, *citing Sawyer v. Whitley,* 505 U.S. 333, 339 (1992). This means the state can mount additional evidence that was not adduced at trial, or it can include charges it elected not to pursue if there is proof the charges were contemplated. *Bousley,* 523 U.S. at 624.

### V. DISCUSSION

#### A. Arab's Arguments

In Arab's brief, he slightly modifies his claims. He argues that the State failed to give him a fair trial, specifically that (1) the State failed to prove the value of the stolen vehicle; (2) the jury was not instructed on intent; (3) Arab returned the vehicle to the victim, which "clears me of intent to deprive the property and not return it" and (4) the "vict[i]m stated I returned his property and nothing was damaged or missing." Doc. 18 at 1. He states that "the key was in the car, the car was on and running, there is no intent to steal, this is a case of 'driving without the owner[']s consent' (joy-rid[]ing) a (misdemeanor)." *Id.* Arab argues that "[t]he State of Iowa failed to pro[ve] without a reasonable [] doubt that I did not have the intention to return the property stolen." Doc.

9

20. He points to the victim's testimony that Arab came out of the alley and asked him whether he was looking for this vehicle and returned his property. *Id.* He states that it was "clear I had remorse and guilt and my intention's was only joy rid[]ing, driving without the owner's consent." *Id.* Arab requests the felony be dropped to a misdemeanor or that he be granted a new trial. Doc. 18 at 1; Doc. 20 at 1.

In three of his supplements, Arab also asserts that he has completed the minimum three-year sentence and that he is improperly being denied work release. *See* Docs. 19, 22, 23. He contends that the Iowa Department of Corrections "continue to be manufacturing disciplinary reports holding me back from moving forward," attaching a document that indicates he has been subject to seven disciplinary actions. Doc. 22 at 1, 3.

### B. Respondent's Arguments

The State asserts that Arab's argument of failure to prove the value of the stolen vehicle was procedurally defaulted because he never presented that argument to the state courts. Doc. 21 at 9. The State asserts that the other three arguments are "subsumed by the single issue decided on direct appeal." *Id.* at 10. The State argues that the claim Arab presented to the state courts depended on the interpretation of Iowa Code § 714.1(4) and thus is not reviewable in a habeas case. *Id.* at 2. The State argues that a federal court in a habeas case cannot review a state court's ruling on state criminal law. *Id.* at 10. Even so, the State asserts that the evidence was legally sufficient to prove Arab lacked intent to return the vehicle. *Id.*

### C. Analysis

Arab does not contend that a state court ruling was contrary to or an unreasonable application of any Supreme Court caselaw. As such, his claims can only succeed if he

10

establishes that a state court decision was based on an unreasonable determination of the facts in light of the evidence at trial.

### 1. Exhaustion

Arab pursued one argument through the state courts: the vehicle was not stolen because of a lack of evidence of the requisite implied intent to permanently deprive the owner of the vehicle. At no time did Arab assert in state court that the State failed to prove the value of the vehicle. The State is correct that any claim based on failure to prove that value beyond a reasonable doubt is not exhausted. In his habeas brief Arab neither addresses the exhaustion of this claim nor does he attempt to establish cause for his failure to raise the argument in state court. As such, his claim based on failure to prove the vehicle's value is dismissed. Arab's remaining claims can be liberally considered to fall within the argument he presented to the state court on direct appeal.

### 2. Interpretation of State Law

To the extent that Arab continues to argue that § 714.1(4) implicitly requires an intent to permanently deprive and there is insufficient evidence of that element, that claim is denied. The Iowa Court of Appeals construed the Iowa theft statute, and a federal court reviewing a habeas petition will not reconstrue it. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995) ("It is elementary that state law defines the elements of state-law crimes."; "It is the task of the Supreme Court of Iowa, not this court, to determine and define the scope of the Iowa burglary statute. Our role is limited to viewing the evidence in the light most favorable to the verdict, including all reasonable inferences to be drawn therefrom, and

11

determining whether any rational trier of fact could have found every essential element of the crime, as defined by Iowa law, beyond a reasonable doubt."). Federal habeas relief may be granted when a state court decision is contrary to clearly established federal law, but cannot be based on a challenge to the construction of state law. "The United States Supreme Court has held repeatedly that federal habeas relief is not available for an error of state law, and the federal Due Process Clause does not require a determination of whether the state has correctly applied state law." *Willey v. Fayram*, No. C10-0093, 2013 WL 4401647, at *12 (N.D. Iowa Aug. 15, 2013), *report and recommendation adopted*, No. C10-0093-LRR, 2013 WL 4736176 (N.D. Iowa Sept. 3, 2013).

The Iowa courts declined to construe § 714.1(4) to require an element of taking the property with intent to permanently deprive the owner of the property. Rather, with respect to intent, Iowa courts require only that the defendant know the property was stolen and not intend to promptly restore it to the owner or deliver it to an appropriate public officer. To the extent that Arab is arguing that the Iowa court improperly used an incorrect standard for intent, a federal court cannot redefine the scope of intent for the Iowa theft statute. To the extent that Arab is arguing that the jury was not properly instructed on the standard for intent, the jury instructions match the required elements for theft under § 714.1(4) as set forth by the Iowa courts.[2] *See* Doc. 7-4 at 7.

---

[2] Jury Instruction number 12 provided that:

The State must prove all of the following elements of Theft in the Second Degree:

1. A 2002 Chevrolet Tahoe was stolen.
2. On or about January 13, 2021, in Woodbury County, Iowa, the defendant exercised control of the automobile.
3. At the time the defendant knew the property had been stolen.
4. The defendant did not intend to promptly return [it] to the owner or to deliver it to an appropriate police officer.

Doc. 7-4 at 7.

12

Case 5:24-cv-04037-LTS-KEM    Document 25    Filed 06/23/25    Page 12 of 19

### 3. *Sufficiency of the Evidence*

Arab appears to argue that the State failed to prove beyond a reasonable doubt that he had the requisite intent and thus could be found guilty under § 714.1(4). Constitutionally, sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* The Eighth Circuit has stated that, under AEDPA, a federal court may grant habeas relief "only if we find the Iowa Court of Appeals' conclusion that the evidence satisfied the *Jackson* sufficiency of evidence standard 'both incorrect *and* unreasonable.'" *Garrison v. Burt*, 637 F.3d 849, 854–55 (8th Cir. 2011) (quoting *Cole v. Roper,* 623 F.3d 1183, 1187 (8th Cir. 2010)); *see also Skillicorn v. Luebbers,* 475 F.3d 965, 977 (8th Cir. 2007) (recognizing the scope of review of the state court's determination of whether evidence was sufficient is "extremely limited"). Thus, to grant relief a habeas court must find that the Iowa Court of Appeals was both incorrect and unreasonable in holding that a rational trier of fact could have found that the elements of the crime were established beyond a reasonable doubt.

Section 714.1(4) states that a person commits theft when the person "[e]xercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or deliver it to an appropriate public officer." In finding the evidence sufficient, the Iowa Court of Appeals relied on evidence that Arab took possession of the vehicle; sped away—almost striking another vehicle in the process; took items from the vehicle, including the face plate of the vehicle's radio; was found in the area where the vehicle was discovered and then engaged in deception

13

about who took the vehicle. *Arab*, 2022 WL 5073852, at *2. The court concluded that the "evidence supports the finding that the vehicle was stolen, Arab knew it was stolen, and it was not his purpose to promptly return it to the owner or a public officer." *Id*.

At Arab's criminal trial, the following evidence was presented to the jury: video footage from security cameras at the convenience store; testimony of the store clerk; testimony of the driver of the vehicle; testimony of the owner of the vehicle (who lived with the driver); testimony of an employee of the Woodbury County 911 Dispatch Center; recordings of the 911 calls; photographs of the vehicle after it was located and testimony of an officer related to clothing worn by Arab when he was arrested matching that seen on the store surveillance video. Doc. 7-2.

The store clerk testified about how she conversed with Arab both when he was in the store and when he was sitting on a ledge outside of the store. Doc. 7-2 at 39, 42-43, 45-49. She testified that a Chevrolet Tahoe pulled up in front of the store, the driver and passenger came inside the store, and then she saw Arab "hopping into the vehicle and hesitated—it kind of looked like he didn't know what he was doing at first—and then sped off." *Id*. at 50-54. She later stated that she was one hundred percent confident in her identification of Arab as the person who took the vehicle. *Id*. at 63.

The driver of the vehicle testified that he saw Arab outside of the store as he pulled up to the front of the store, and then left the Tahoe running with his phone, wallet and other items inside of it while he and his cousin entered the store. *Id*. at 70-78. Viewing the surveillance video from the outside of the store, he identified Arab as the person who took the vehicle and sped away. He further testified that, after he located the Tahoe, he saw Arab approach the Tahoe from an alley and that he was holding the keys to the vehicle, along with the phone and other items that were inside the Tahoe when it was stolen, and that he recognized Arab as being the same individual he saw when he entered the store. *Id*. at 89-92. Thus, the driver and store clerk both identified Arab as the person who took the car and sped away, as confirmed by video surveillance footage. The

14

jury was also presented with evidence that Arab was arrested wearing clothes that matched those visible in the store surveillance video. The Iowa Court of Appeals was reasonable to conclude that a rational trier of fact could rely on that evidence to find that Arab stole the vehicle and thus knew it was stolen.

Turning to whether it was Arab's purpose "to promptly restore it to the owner or deliver it to an appropriate public officer," Arab does not challenge the evidence that the Iowa court relied on to conclude that it was not Arab's purpose to promptly return it. Rather, Arab relies on his return of the vehicle undamaged. However, just because he handed over the keys and attempted to evade consequences when caught with the vehicle, it does not follow that a rational trier of fact could not conclude from the evidence that he exercised control over the vehicle without the intent to promptly return it.

Evidence at trial demonstrated that Arab was carrying personal property from the vehicle on his person, that he had left his own personal property in the vehicle, and that he was carrying bags of his clothes to the vehicle when found and confronted by the driver. Doc. 7-2 at 89-95, 101. The driver of the vehicle testified that he and his cousin drove around looking for the Tahoe and eventually located it in front of a residence. He testified that when he and his cousin approached Arab after arguing with nearby homeowners, Arab stated "Are you guys looking for that truck? My friend gave me the keys and told me to give them back to you." *Id.* at 90.

The driver testified that he immediately accused Arab of being the person who took the Tahoe. *Id.* at 90-91. He further testified that when he demanded his phone, lighter, and radio faceplate, Arab complied. *Id.* The driver stated that Arab attempted to walk away but he grabbed Arab, told him he was going to jail for stealing the Tahoe, wrestled with him, and held him down until the police arrived. *Id.* at 94-95. A rational trier of fact could infer that Arab had planned to continue using, without an intent to return, the vehicle, but pivoted when confronted by the driver and his cousin. The Iowa Court of Appeals was thus reasonable to conclude that a rational jury could find it was

15

not Arab's purpose to promptly return the vehicle. Arab fails to present clear and convincing evidence to rebut the presumption that the jury's finding was correct.

The Iowa Court of Appeals' conclusion that a rational trier of fact could have found the elements of the crime were established beyond a reasonable doubt was neither incorrect nor unreasonable. The evidence was constitutionally sufficient to support Arab's conviction.

### 4. *Denial of Work-Release*

In three of his supplements, Arab asserts that he has completed the minimum three-year sentence and that he should be on work release if the "Iowa Department of Corrections follows the rules as they should." *See* Docs. 19, 22, 23. He contends that the Iowa Department of Corrections (IDOC) "continue to be manufacturing disciplinary reports holding me back from moving forward." Doc. 22 at 1. The IDOC website indicates that the Iowa Board of Parole denied parole to Arab on September 9, 2024, with a subsequent review in nine months. On September 23, 2024, the Iowa Board of Parole rejected his appeal. Doc. 23 at 5.

Arab has not exhausted this claim in the state courts nor has he demonstrated cause for his failure to exhaust the claim. Thus, it is procedurally barred. Even if he had exhausted the claim, it would fail to warrant habeas relief. A federal court may issue a writ of habeas corpus only when a conviction violates the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 2241, 2254. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *see Bagley v. Rogerson,* 5 F.3d 325, 328 (8th Cir. 1993) (a "violation of state law, without more, does not state a claim under the federal Constitution"). Whether the IDOC has properly followed or interpreted state laws or regulations regarding computation of parole or transfer eligibility dates does not, without more, give rise to a Due Process constitutional violation. *Garner v. Howell,* 840 F.2d 616, 617 (8th Cir. 1988) (alleged errors in

16

interpretation or application of state statute governing determination of parole eligibility date for habitual offenders); *Schwindling v. Smith,* 777 F.2d 431, 433 (8th Cir. 1985) (same); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003).

Courts have held that inmates do not have a protected liberty interest in a particular custody classification or work release. *See, e.g.*, *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (determining that a prisoner does not have a constitutional right to be released prior to the expiration of a valid sentence; early release is much like parole, in that either possibility "provides no more than a mere hope that the benefit will be obtained"); *Sanchez v. Hunt*, No. 5:16-HC-2160-FL, 2017 WL 2787986, at *3 (E.D.N.C. June 27, 2017) (inmates do not have a protected liberty interest in a particular custody classification, work release, or to participate in educational programs); *Green v. Bureau of Prisons*, No. CIV. 00-819, 2002 WL 32619483, at *3 (D. Minn. Jan. 29, 2002) (possibility of early release is not a liberty interest). Similarly, "[t]he denial of parole is insufficient to confer a liberty interest because the duration of plaintiff's original sentence was not altered." *Brumfield v. Barrett*, No. C16-3109-LTS, 2016 WL 6304445, at *4 (N.D. Iowa Oct. 26, 2016); *see also Morgan v. Bartruff*, 545 F. App'x. 592, 592-93 (8th Cir. 2013) (deciding that Iowa inmate did not state a valid due process claim based on his inability to be heard and considered for parole eligibility); *Closs v. Weber*, 238 F.3d 1018, 1022 (8th Cir. 2001) ("The board's decision whether to grant parole to Mr. Closs was discretionary" and "he therefore had no protected liberty interest in receiving it"); *Jones v. Kelley*, No. 19-CV-00099, 2019 WL 3194831 (E.D. Ark. June 20, 2019), *report and recommendation adopted*, 2019 WL 3137499 (E.D. Ark. July 15, 2019) ("There can be no federal constitutional violation absent a federally protected liberty interest, and there is no protected liberty interest in the possibility of parole."). Arab was not constitutionally entitled to any form of release after his mandatory minimum sentence was completed. The fact that he may be parole-eligible after the completion of his minimum three-year sentence does not mean there is a

constitutional guarantee that he will be released at a specific time. This claim does not warrant habeas relief.

## VI. CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Having thoroughly reviewed the record in this case, I find Arab failed to make the requisite "substantial showing" with respect to the claims raised in his 28 U.S.C. § 2254 petition. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because he does not present a question of substance for appellate review, a certificate of appealability will not issue. If Arab desires further review of his 28 U.S.C. § 2254 petition, he may request the issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman v. Benson,* 122 F.3d 518, 521 (8th Cir. 1997).

## VII. CONCLUSION

For the reasons set forth herein, petitioner Abdirizak Mursal Arab's amended petition (Doc. 4) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and this action is **dismissed with prejudice**. A certificate of appealability shall **not issue**.

**IT IS SO ORDERED** this 23rd day of June, 2025.

_____
Leonard T. Strand
United States District Judge